# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| AMARILLO HOSPITALITY TENANT, LLC, | § § § | |
| Plaintiff, | § | |
| v. | § | NO. 2:14-CV-00143-J |
| | § | |
| MASSACHUSETTS BAY INSURANCE COMPANY, | § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On December 22, 2014, Defendant filed a *Motion for Partial Summary Judgment*, seeking dismissal of all of Plaintiff's extra-contractual or bad faith claims: negligence, breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act (DTPA), misrepresentation, common law fraud by negligent misrepresentation, and breach of fiduciary duty. Defendant's Motion did not address Plaintiff's breach of contract claim. After the Court granted Plaintiff three extensions of time, Plaintiff filed a response on March 31, 2015 in which it informed the Court that it would voluntarily dismiss the following claims: negligence, misrepresentation, common law fraud by negligent misrepresentation, and breach of fiduciary duty. Accordingly, the Court's opinion will only address Plaintiff's DTPA, Texas Insurance Code, and breach of the duty of good faith and fair dealing claims. Defendant filed a reply on April 14, 2015. Defendant's *Motion for Partial Summary Judgment* is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This insurance dispute arises from a hailstorm that occurred in the Amarillo area on May 28, 2013. Plaintiff is the owner of the Courtyard Marriott, a hotel located on Polk Street in downtown Amarillo. Defendant is the Plaintiff's insurance carrier. At the time of the hailstorm, Plaintiff's hotel was covered by commercial insurance policy number ZDT8937610, which Plaintiff had purchased from Defendant. That insurance policy covered losses sustained by the Courtyard Marriott as a result of hail and wind damage. Plaintiff was up to date with its premium payments at the time of the storm.

Plaintiff's property manager, Donna Paraliticci, described the May 28, 2013 hailstorm as "intense" and "the worst hailstorm that we've had." The day after the storm, Ms. Paraliticci went onto the roof of the hotel and observed damage to one of the hotel's signs as well as damage to some aluminum vent tubes. She did not observe any damage to the roof itself. At some point after the storm, Plaintiff observed leaks on the tenth floor of the hotel and hired a public adjuster who inspected the roof and concluded that it had sustained damage during the hailstorm. Plaintiff then filed a claim with Defendant, asserting that Defendant was obligated under the insurance policy to pay for the cost of repairing or replacing both the roof and the damaged signage. Ultimately, the Defendant did reimburse Plaintiff for the cost of repairing the broken signage after determining that the sign damage was covered under the insurance policy.

To determine whether the alleged damage to the *roof* was caused by the hailstorm, Defendant's adjuster, Brad Taylor, hired Donan Engineering to perform an investigation. After inspecting the roof on July 24, 2013, Nathan Austin, a forensic engineer with Donan, prepared a report for Brad Taylor which concluded that Plaintiff's roof did not sustain hail or wind damage as a result of the May 28, 2013 storm. Donan Engineering performed a second inspection of the

2

roof on October 8, 2013, focusing specifically on whether the roof's membrane was fractured due to hail impact.  Donan issued another report on October 29, 2013, again concluding that the hailstorm did not cause damage to the roof.  Defendant provided both of the Donan Engineering reports to the public adjuster representing Plaintiff.  Relying on these two expert opinions, Brad Taylor sent a letter to Plaintiff denying its claim for repair or replacement of the hotel roof.

At least one of Plaintiff's corporate officers expressed dissatisfaction with Defendant's decision to deny Plaintiff's claim for roof damage.  Chirag Patel stated that he "just couldn't reason that 80, 90 percent of Amarillo's roofs were damaged and my roof wasn't from the same hailstorm."  Mr. Patel also stated that he learned—possibly through internet research or some friend—that Donan Engineering "[was] disqualified by the State of Texas or some state . . . for siding with the insurance companies to deny hail claims nationwide or in the region."  Defendant's assistant vice president for property claims, Michael Dandridge, stated that he did not know whether Donan worked primarily for insurance companies and did not know the percent of income that Donan made from representing insurance companies.

After learning that its claim was denied, Plaintiff hired Shield Engineering to perform another inspection of the roof.  Shield Engineering issued a report that disputed the conclusions reached by Donan Engineering in its two reports.  At Brad Taylor's request, Plaintiff mailed this report to the Defendant in April of 2014.

Plaintiff filed suit in Potter County District Court on May 9, 2014.  In its Original Petition, Plaintiff alleged that Defendant dramatically underpaid its claims under the insurance policy, despite objective evidence of significant hail damage to the Courtyard Marriott's roof.  Specifically, Plaintiff asserted the following causes of action: negligence, breach of contract, violations of the DTPA (Tex. Bus. & Com. Code §§ 17.46(b)(5), (7), (12), (14), (20), (24) and §§

17.50(a)(2), (3), (4)), violations of the Texas Insurance Code (Tex. Ins. Code §§ 541.060,

541.061, 542.058), breach of the common law duty of good faith and fair dealing, breach of

fiduciary duty, misrepresentation, and common law fraud by negligent misrepresentation.

Defendant removed the case to this Court on June 13, 2014 and filed a *Motion for Partial

Summary Judgment* on December 22, 2014, seeking summary judgment on all of Plaintiff's

claims, save the breach of contract claim.  Plaintiff filed a response on March 31, 2015, stating

that it would voluntarily dismiss the following claims: negligence, breach of fiduciary duty,

misrepresentation, and common law fraud by negligent misrepresentation.  Thus, the only

remaining claims subject to Defendant's *Motion for Partial Summary Judgment* are (1) breach of

the duty of good faith and fair dealing, (2) DTPA violations, and (3) Texas Insurance Code

violations.

## STANDARD FOR SUMMARY JUDGMENT MOTIONS

This Court may grant summary judgment on a claim if the record shows that there is no

genuine issue of material fact and that "the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if a reasonable jury could return a

verdict for the nonmoving party on the issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  Where the nonmovant bears the burden of proof at trial, the movant may either offer

evidence that undermines one or more of the essential elements of the nonmovant's claim, or

point out the absence of evidence supporting an essential element of the nonmovant's claim.  *See

Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (where there is an absence of evidence

supporting an essential element of the nonmovant's claim, "there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial").

If the movant successfully carries this burden at the summary judgment stage, the burden then shifts to the nonmovant to show that the court should not grant summary judgment. *Id.* at 324. The nonmovant must set forth specific facts that show a genuine issue for trial—only a genuine dispute over a material fact will preclude summary judgment. *Anderson*, 477 U.S. at 248, 256. The nonmovant cannot rely on conclusory allegations, improbable inferences, or unsupported speculation. *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993). In ruling on a summary judgment motion, a court must review the facts and draw all reasonable inferences in favor of the nonmoving party—here, the Plaintiff. *See Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

## DISCUSSION

In its Motion, Defendant proffers two independent arguments for why this Court should grant summary judgment in its favor on Plaintiff's DTPA, Texas Insurance Code, and breach of the duty of good faith and fair dealing claims: (A) Defendant did not act in bad faith when it denied the claim, because a bona fide dispute existed over the nature and extent of the property damage at issue; and (B) Plaintiff has no evidence that Defendant made any misrepresentations regarding the insurance policy.

### A.  WHETHER DEFENDANT ACTED IN BAD FAITH OR WHETHER A BONA FIDE DISPUTE EXISTED OVER THE NATURE OF THE PROPERTY DAMAGE.

Aside from its standard contractual obligations, an insurance company operating in Texas is under a legal duty to deal fairly and in good faith with an insured in the processing of insurance claims. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). A violation of this legal duty is a breach of the duty of good faith and fair dealing—a separate tort distinct from any breach of the underlying insurance contract. *See Transp. Ins. Co. v. Moriel*,

879 S.W.2d 10, 17 (Tex. 1994); *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).

The touchstone of bad faith liability under Texas law is unreasonableness in the processing of

insurance claims. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 64 (Tex. 1997).

Specifically, to establish that an insurer has breached the duty of good faith and fair dealing, an

insured must prove the following: (1) that the insurer had no reasonable basis for denying or

delaying payment of the claim; and (2) that the insurer knew or should have known that it had no

reasonable basis for denying or delaying payment of the claim. *See id.* at 63; *Nino v. State Farm

Lloyds*, No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993, at *9 (S.D. Tex. 2014).

This two-part test for the breach of the duty of good faith and fair dealing also applies to

DTPA and Texas Insurance Code claims brought against an insurance company. *See

Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *Tex. Mut. Ins. Co. v.

Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App. 2010) ("An insurer's liability

under former Article 21.21 of the Texas Insurance Code, and the Texas Deceptive Trade

Practices Act, incorporate the common-law bad faith standard developed as part of the elements

of a claim for breach of the duty of good faith and fair dealing"). In other words, "when an

insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim

asserting a wrongful denial or delay in the payment of policy benefits, if there is no merit to the

bad faith claim, there can be no liability on the statutory claims." *Devonshire Real Estate &

Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 WL 4796967, at *14 (N.D. Tex.

Sept. 26, 2014) (quoting *Kondos v. Allstate Tex. Lloyds*, No. CIV.A. 1:03-CV-1440, 2005 WL

1004720, at *13 (E.D. Tex. Apr. 25, 2005)). Thus, to survive summary judgment on each of its

remaining claims—breach of the duty of good faith and fair dealing, DTPA violations, and Texas

Insurance Code violations—Plaintiff must establish that there is a genuine dispute of material

fact as to whether Defendant knew or should have known that its liability under the insurance policy had become reasonably clear at the time it denied Plaintiff's claim. *See Carper v. State Farm Lloyds*, No. CIV.A. 301-CV1979-M, 2002 WL 31086074, at *7 (N.D. Tex. Sept. 13, 2002). Plaintiff has failed to make this showing.

To establish that an insurer acted in bad faith by denying a claim when coverage was reasonably clear, a plaintiff can show that the claim was denied based on a "biased investigation intended to construct a pretextual basis for denial." *Nino v. State Farm Lloyds*, No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993, at *11 (S.D. Tex. 2014) (quoting *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998)). Alternatively, a plaintiff can establish that an insurer acted in bad faith by showing that the expert report the insurer relied on "was not objectively prepared and based on inadequate information and that the insurance carrier was aware of the report's questionable validity." *Id.* (citing *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997)). For example, the Texas Supreme Court found that the evidence supported a finding of bad faith where (1) the insurer's engineering company performed up to 90% of its work for insurance companies; (2) the engineering company almost never reached a conclusion that favored the insured; (3) the engineering company held certain general views that favored insurance companies; and (4) the insurer was aware of the engineering company's biases. *See Nicolau*, 951 S.W.2d at 448-449.

However, if the evidence merely establishes a bona fide dispute about the insurer's liability, or if the insurer was simply incorrect about the factual basis for its denial of the claim, then there can be no finding of bad faith liability. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17-18 (Tex. 1994). Similarly, "[a] simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith." *Id.* at 18.

Here, Defendant has presented evidence that there was a bona fide dispute as to the nature and extent of the damages to Plaintiff's property and that there was a simple disagreement among experts regarding the cause of the damage.  Defendant presented evidence that it hired Donan Engineering to perform two different inspections of the alleged roof damage.  Following each inspection, Donan prepared a comprehensive report that provided substantial evidence for their conclusion that the damage to the roof was not caused by hail.  Specifically, in the August 7, 2013 report, Donan Engineering stated that "[s]plash marks . . . were found but no fracturing of the mat is visible when the membrane around the splash mark is cleaned.  The hail that fell at this site was neither large nor dense enough to damage sound TPO single-ply roofing. . . . No hail or wind damage was found to the TPO roofing."  And in the October 29, 2013 report, Donan Engineering stated that "[n]o fractures or cracks are visible on the membrane top or bottom surfaces at the  . . . sample locations. . . . Based on the collateral indicators of hail, and the lack of damage to three of four samples, the TPO membrane was not damaged by hail impact during the storm on May 28, 2013."  Defendant also presented evidence that these findings were disputed by the engineering firm hired by Plaintiff.  This is a clear example of a simple disagreement among experts as to the cause of the roof damage—a bona fide dispute about the insurer's liability that does not rise to the level of bad faith.  *See Nino v. State Farm Lloyds*, No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993, at \*14-\*15 (S.D. Tex. 2014) (finding that a simple disagreement among experts precludes bad faith liability where there was ample evidence that the inspectors hired by the insurer made multiple inspections of the property and based their decisions on "their expertise and inspection of the property").

Defendant further asserts that Plaintiff lacks evidence that Defendant had no reasonable basis for denying or delaying payment of the insurance claim—an essential element of Plaintiff's

DTPA, Texas Insurance Code, and breach of the duty of good faith and fair dealing claims. Plaintiff's response to Defendant's *Motion for Partial Summary Judgment* is almost completely devoid of any evidence which might create a genuine dispute of material fact as to whether Defendant had no reasonable basis for denying or delaying payment of Plaintiff's claim. The argument section of Plaintiff's response contains not a single citation to, or quotation from, the depositions in Plaintiff's appendix. Instead, Plaintiff makes a series of conclusory statements with no clear factual support. For example, Plaintiff states that "the above recitation of facts show that coverage was absolutely clear" without identifying for the Court which specific facts produce such clarity. And Plaintiff asserts that the "facts submitted above show the attempts by Plaintiff to have this claim paid, and denial by Defendant through failing to take into consideration all the facts in favor of coverage and payment," without explaining to the Court what those facts are.

In the absence of helpful guidance from the Plaintiffs, the Court has carefully reviewed the depositions in Plaintiff's appendix to determine whether they include any evidence that would establish a genuine dispute of material fact as to whether Defendant denied Plaintiff's claim in bad faith when coverage was reasonably clear.

First, Plaintiff argues that the testimony of Michael Dandridge, a vice president for Defendant Massachusetts Bay Insurance Company, indicates that the Defendant "did not know, or attempt to know, all necessary conditions surrounding the subject claim." However, Mr. Dandridge's deposition merely established that Defendant had its own internal "best practices" for handing hail damage claims and that, according to Mr. Dandridge, those best practices would include reviewing information provided by the engineers for both the insurer and the insured, as well as information provided by the estimator and the roofing manufacturer. Contrary to

Plaintiff's arguments, the deposition testimony does *not* establish that "[Mr. Dandridge] then conceded that he had not spoken with any of these individuals, nor could he attest as to anyone else [at] Massachusetts Bay Insurance Company considering such information." The testimony merely establishes that Mr. Dandridge had never spoken with Chirag Patel—one of Plaintiff's corporate officers—and Donna Paraliticci—Plaintiff's property manager. The mere fact that one of Defendant's vice presidents—an individual with no direct involvement in Plaintiff's claim— did not speak to two of Plaintiff's employees, does not suggest that Defendant "did not know or attempt to know, all necessary conditions surrounding the subject claim." There is no evidence that Defendant ignored information provided by other engineers, estimators, or roofing manufacturers.

Second, Plaintiff seems to suggest that Defendant acted unreasonably because, when evaluating Plaintiff's claim, it failed to consider that many nearby properties sustained hail damage. However, there is simply no evidence in the record to create a fact issue on the question of whether it was reasonably clear that Plaintiff's roof sustained hail damage from the May 28, 2013 storm. Indeed, Plaintiff has not even bothered to provide the Court with a copy of its own engineering report, which supposedly contradicts the findings of Defendant's engineer. There is nothing in the record to indicate what Plaintiff's engineer concluded about the damage to the roof and what observations supported that conclusion. *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 822 (S.D. Tex. 2011) (rejecting plaintiff's bad faith claims in part because there was no engineering report in the record that contradicted defendant's expert reports and no evidence that defendant's decision to rely on its own experts, rather than other experts, was unreasonable). No reasonable jury could find, based on this evidence alone, that Defendant's investigation was unreasonable and liability was reasonably clear.

Third, Plaintiff argues that Defendant relied on "hired gun engineering companies to reach result-oriented conclusions." The only possible evidence for this conclusory statement is deposition testimony from Chirag Patel, one of Plaintiff's corporate officers, that he had heard—either through internet research or from a friend—that Donan Engineering was "disqualified by the State of Texas or some state for . . . siding with the insurance companies to deny hail claims nationwide or in the region." However, "evidence that an expert works primarily for insurance companies and an insurer's awareness of an adjuster's particular view, standing alone, does not amount to a bad-faith finding."[1] *Nino v. State Farm Lloyds*, No. 7:13-CV-318, 2014 U.S. Dist. LEXIS 163993, at *21 (S.D. Tex. 2014). Instead, bad faith is established by a showing that the Defendant conducted a biased investigation or otherwise relied on expert reports that it knew lacked objectivity and knew were based on inadequate information. *See id.* at 11. Plaintiff has presented the Court with no evidence indicating that Defendant conducted such a biased investigation.

There is no evidence that Donan Engineering's two reports were not objectively prepared and there is no evidence that it was unreasonable for Defendant to rely on those reports when denying Plaintiff's claim. There is no evidence that it was reasonably clear that the Plaintiff's roof was damaged by the May 28, 2013 hailstorm. There is no evidence that Defendant purposefully selected Donan Engineering because of its general views on hailstorms. There is no evidence that Donan Engineering sided with insurance companies the vast majority of the time. And there is no evidence that Defendant conducted its investigation in a manner designed to defeat coverage. By contrast, Defendant *has* presented the Court with evidence suggesting that

---

[1] Plaintiff presents no evidence suggesting that Defendant was aware that Donan Engineering worked primarily for insurance companies. When asked about his knowledge of Donan Engineering, Defendant's Vice President Michael Dandridge stated that he did not know whether Donan had a reputation for working primarily for insurance carriers.

11

there was a bona fide dispute and a simple disagreement among experts about whether the cause of the loss was one covered by the insurance policy.

The summary-judgment evidence is insufficient to persuade a reasonable juror that Defendant knew or should have known that it was reasonably clear that Plaintiff's claim was covered. *See Carper v. State Farm Lloyds*, No. CIV.A. 301-CV1979-M, 2002 WL 31086074, at *7 (N.D. Tex. Sept. 13, 2002). Plaintiff does not raise a genuine issue of material fact in support of its contentions that Donan Engineering's reports were biased and not objectively prepared or that Defendant's reliance on the reports was unreasonable. Accordingly, because there is no genuine dispute of material fact regarding whether Defendant acted in bad faith by denying Plaintiff's claim when coverage was reasonably clear, the Court grants summary judgment in Defendant's favor on Plaintiff's DTPA, Texas Insurance Code, and breach of the duty of good faith and fair dealing claims.

Plaintiff has asserted one claim that does not incorporate the common law bad-faith standard: Tex. Ins. Code § 542.058, which establishes requirements for the prompt payment of claims. *See Salinas v. State Farm Fire & Cas. Co.*, No. CIV.A. B-10-194, 2012 WL 5187996, at *10 (S.D. Tex. Feb. 23, 2012) (stating that an earlier court order dismissing plaintiffs' common law and statutory bad faith claims did not apply to plaintiffs' separate § 542.058 claim). Section 542.058 was part of former Article 21.55, not former Article 21.21, and thus does not involve any type of bad faith claim. *See Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 & n.8 (Tex. App. 2010) (noting that the Texas Insurance Code claims that incorporate the common law bad faith standard are those found in former Article 21.21, now Section 541 of the Insurance Code). Defendant will be liable under Tex. Ins. Code § 542.058 only if Plaintiff's claim is covered by Defendant's insurance policy. *See Progressive Cnty. Mut.*

12

*Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). Thus, Defendant's liability under this

provision of the insurance code depends on the outcome of the remaining breach of contract

claim—a claim that is not addressed by Defendant's Motion. Accordingly, Defendant's *Motion*

*for Partial Summary Judgment* is denied as to Plaintiff's claim under section 542.058 of the

Texas Insurance Code.

> ### B.   WHETHER MASSACHUSETTS BAY INSURANCE COMPANY MADE
> ### MISREPRESENTATIONS REGARDING THE INSURANCE POLICY.

Because the Court has already concluded that Defendant's *Motion for Partial Summary*

*Judgment* should be granted on the basis of Defendant's bad faith arguments, the Court declines

to address Defendant's alternative arguments regarding Plaintiff's evidence of

misrepresentations.

## CONCLUSION

Defendant's *Motion for Partial Summary Judgment* is GRANTED IN PART and

DENIED IN PART, specifically:

Defendant's *Motion for Partial Summary Judgment* is GRANTED as to the following

claims: (1) breach of the duty of good faith and fair dealing; (2) Tex. Bus. & Com. Code §§

17.46(b)(5), (7), (12), (14), (20), and (24); (3) Tex. Bus. & Com. Code §§ 17.50(a)(2), (3), and

(4); and (4) Tex. Ins. Code §§ 541.060 and 541.061.

Defendant's *Motion for Partial Summary Judgment* is DENIED as to the following

claim: Tex. Ins. Code § 542.058.

It is SO ORDERED.

Signed this the ____ day of April, 2015.

**MARY LOU ROBINSON**
**UNITED STATES DISTRICT JUDGE**

13